940 F.2d 651
 139 L.R.R.M. (BNA) 2807
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Verna M. BINKLEY, Plaintiff-Appellant,
v.
William D. LOUGHRAN, Sue Dupor, Herman Baker, Southern Bell
Telephone and Telegraph Company, Inc., Defendants-Appellees.
 No. 89-1030.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1989.
Decided July 25, 1991.
As Amended Aug. 19, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., District Judge. (CA-87-900-G-C, CA-87-901-G-C, CA-88-399-G-C)
 Bertram Ervin Brown, II, Moore and Brown, Winston-Salem, N.C., for appellant.
 Max Daniel McGinn, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., for appellees.
 William P.H. Cary, Brooks, Pierce, McLendon, Humphrey & Leonard, R. Cameron Cooke, Walker, Ray, Simpson, Warren, Blackmon, Younce, Dowda & White, Greensboro, N.C. (on brief), for appellees Dupor and Baker;
 Fred T. Hamlet, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C. (on brief), for appellee Loughran;
 Audrey L. Polk, Keith W. Kockler, Atlanta, Ga. (on brief), for appellee Southern Bell Telephone.
 M.D.N.C., 714 F.Supp. 768.
 AFFIRMED.
 Before DONALD RUSSELL and MURNAGHAN, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This case presents a very narrow issue for resolution on appeal. After the removal of these cases from the state court to the federal court, and after some proceedings in the federal court, the plaintiff filed a motion to remand the matter to the state court, which motion the court below overruled. This appeal followed, on the sole issue of the propriety of the ruling refusing to remand the proceedings to the state court.
 
 
 2
 The district court thereafter granted the defendants' motion for summary judgment in relation to this claim. Previously, the court below had found that all of the claims asserted by the plaintiff, save one, were preempted by Sec. 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185, Sec. 301. Because of preemption, remand was therefore not proper, save as to the one count.
 
 
 3
 The one remaining complaint found not to be preempted related to a charge of wire tapping or phone monitoring of the plaintiff's home phone. Ultimately, summary judgment was granted as to this claim, exercising the pendent jurisdiction of the federal court (see 28 U.S.C. Sec. 1441(a)). No appeal is taken from the action of the court in granting summary judgment as to the wire tapping or phone monitoring of the plaintiff's home phone.
 
 
 4
 As to the remaining claims asserted by plaintiff, the court below engaged in a very detailed and meticulous review of a sizeable record. Before it were the pleadings, various affidavits, and the extensive deposition of the plaintiff. The district court placed some emphasis on that deposition. Three memorandum opinions were published by the court below, and on each occasion the court found that the remaining claims were preempted under the provisions of Sec. 301.
 
 
 5
 The procedural history of the case illustrates with some clarity the basis for the conclusion that preemption was appropriate. The plaintiff in this instance filed two complaints in the state court, the first and second complaints being identical, save that an additional defendant, plus the necessary allegations as to the added defendant, were added in the second complaint, and both of these complaints were removed by the defendants to the federal court. There, the defendants raised the issue of preemption. Subsequently, the plaintiff filed a third complaint in state court which was described by plaintiff's counsel as "an amendment" to the two previous complaints. Conspicuous by its absence in the third state court complaint was any reference to the collective bargaining agreement which covered the plaintiff and her employer. It was conceded by the plaintiff that this omission was undertaken in an effort to avoid the preemption issue. The factual allegations as to the actions of the defendant co-employees are essentially identical throughout the three complaints. However, it should be noted that it is not permissible for the plaintiff to bring about a remand of an action by amendment of the complaint to eliminate any basis for the federal claim. See 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Secs. 3721, 3722; Brown v. Eastern States Corp., 181 F.2d 26 (4th Cir.), cert. denied, 340 U.S. 864 (1950). Further, the motion for remand requires the court considering that motion to look at all of the pleadings, in making a decision as to whether remand is proper. If the third complaint (second amended complaint) is simply an amendment to the first complaint and the first amended complaint, as asserted by plaintiff's counsel then in looking at all three complaints, it is obvious that these complaints raise issues which arguably invoke preemption under Sec. 301.
 
 
 6
 In the record, voluminous as it is, there are numbers of references to improper conduct on the part of one or more of the defendants, principally Mr. Loughran, which conduct clearly would establish improprieties on his part. Nothing commendable can be said of the actions on the part of Loughran which are the subject of complaints. In fact, Loughran ultimately lost his employment with Southern Bell Telephone and Telegraph Company because of these actions. However, many of the allegations or improprieties on the part of Mr. Loughran related to persons other than the plaintiff in this case, though several instances of impropriety as to this plaintiff were also adduced in that record.
 
 
 7
 Throughout the first complaint and the second complaint, the language in practically every instance relates to "plaintiff's contractual employment and job security," or to conduct which does "interfere and injure plaintiff's employment...." Throughout both the first and the second complaint, the plaintiff clearly pitched her claims on denial of plaintiff's employment opportunities, and on an effort by defendants to force the plaintiff to "relinquish her contractual rights without cause or justification." Without undertaking the detailed analysis set out in the memorandum opinions of the district court, it is sufficient to say that each of these asserted improprieties, taken individually or as a whole, related to terms and conditions of employment, and were clearly covered under the collective bargaining agreement. That agreement contains a grievance procedure which the plaintiff had utilized on a number of previous occasions, so that it must be concluded that she was thoroughly familiar with that procedure. For whatever reason, the plaintiff chose not to invoke the grievance procedure as to these specific allegations, and chose rather to file the state actions.
 
 
 8
 The conclusion of the court below is that these various allegations of improprieties would require an interpretation and application of the collective bargaining agreement through the grievance procedure. That conclusion is patent from the record, and it necessarily flows from that conclusion that preemption would bar any remand to state court.
 
 
 9
 In the three complaints filed by plaintiff, there are included one or more counts of intentional infliction of emotional distress, invasion of privacy, and trespass upon and conversion of personal property. In the third complaint, the plaintiff asserts that the various individual defendants harassed the plaintiff on the job as well as outside the job, stating that the harassment
 
 
 10
 consisted of such acts as falsely stating that the Plaintiff had committed fraudulent acts, telling the Plaintiff as well as implying to her that both her telephone at work and home was being monitored, telling the Plaintiff what she could and could not do, and trying to control her own personal time, harassing the Plaintiff about her [sic] and trying to control her outside business matters, telling her and others that the Plaintiff was insane or incompetent, taking her personal belongings from here without her consent and many times failing to return to the Plaintiff her personal belongings, publishing to others that the Plaintiff was under the care of a psychiatrist as well as revealing such confidential information, speaking to her in a loud, boisterous and crude manner, ridiculing the Plaintiff, as well as other acts of harassment.
 
 
 11
 Essentially, these same allegations were contained in the first and second complaints, though in those complaints the incidents were related to allegation of violation of her contractual rights and infringement on her working conditions.
 
 
 12
 To determine the propriety vel non of the motion to remand, it is necessary to explore with some care the doctrine of preemption, arising under Sec. 301, of the LMRA. Resolution of the question before the court requires careful consideration of the preemption doctrine as it has been established through various opinions of the Supreme Court and other courts. First, it is clear that the question of what falls within the scope of the collective bargaining agreement envisioned under Sec. 301 encompasses not only the precise perimeters of the collective bargaining agreement, but also embraces the so-called "common law of the shop."
 
 
 13
 The courts have struggled for some time over the application of this doctrine in various fact-specific situations. The question of preemption of a count of intentional infliction of emotional distress has given the court some considerable trouble. For the purposes of this case, two cases establish the basic framework within which the facts here must be judged. These are Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985), and Miller v. AT & T Network Sys., 850 F.2d 543 (9th Cir.1988). Additionally, this court must consider the doctrine announced in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988).
 
 
 14
 In looking at these three cases, Allis-Chalmers first undertakes to set down the basic rule, that if state tort law attempts to define the meaning of the contractual relationship as set out in the collective bargaining agreement, then the state tort law is preempted. On the other hand, if the right involved is, in the language of the opinion, a "non-negotiable state-law right independent of any rights established by the collective bargaining agreement," then it is not preempted. The plaintiff contends that the decision in Lingle has altered the doctrine of preemption, contending that preemption is to be found only where resolution of the issue requires the interpretation of the terms of the collective bargaining agreement rather than where the determination of the issue is merely intertwined with the agreement. Allis-Chalmers indicates that courts must look to see whether the state court claim is "inextricably intertwined" with a consideration of the terms of the collective bargaining agreement. Plaintiff's contentions as to Lingle have been dealt with carefully in Newberry v. Pacific Racing Ass'n, 854 F.2d 1142 (9th Cir.1988), there finding that whatever difference there might be between Allis-Chalmers and Lingle is a difference of semantics and not of substance, reaching the conclusion that whether the resolution of the claim requires the collective bargaining agreement to be interpreted, or whether the resolution substantially depends upon an analysis of the terms of the collective bargaining agreement, the end result concerning preemption should be the same. This court agrees with the analysis of Newberry.
 
 
 15
 Cases which have held that the intentional infliction of emotional distress is not preempted have usually fallen into one of two general patterns, namely, patterns of very aggressive overt sexual harassment, and two, patterns of harassment where no collective bargaining agreement exited. As to case law evidencing these types of behavior, a case on which plaintiff relies is significant. In Hogan v. Forsyth Country Club, 79 N.C.App. 483, 340 S.E.2d 116 (N.C.App.), reh. denied, 317 N.C. 334, 346 S.E.2d 149-51 (1986), the factual pattern reveals the crude, abrasive, and overt sexual pursuit exercised by the defendant in that case. In addition, Hogan also stands for the proposition that no issue of preemption is raised--or can be raised--in that case because there was not collective bargaining agreement. Even had there been such an agreement, the Hogan court goes on to state that no collective bargaining agreement in a "civilized society" would undertake to deal with this egregious and outrageous conduct.
 
 
 16
 With this background of the law, one who turns to the allegations in the present complaints, as set out above, finds that they fall within the purview of the collective bargaining agreement, together with the common law of the shop. For instance, the allegation that the plaintiff was accused of fraudulent conduct is amplified in her deposition, where she states that this arose because of her receiving a private-business collect phone call during business hours. In fact, the plaintiff was reprimanded for this action and undertook a grievance proceeding in relation to the severity of that reprimand. Obviously, plaintiff concluded at that time that the "fraudulent conduct" accusation was embraced within the collective bargaining agreement. A similar analysis could and should be applied to each of the allegations of individual items of conduct which the plaintiff alleges collectively caused the intentional infliction of emotional distress by the parties.
 
 
 17
 The conclusion of the district court that these allegations, and the resolution of the claims predicated on these allegations, were "inextricably intertwined" with or substantially dependent on an analysis of the terms of the collective bargaining agreement is correct.*
 
 
 18
 Turning to the issue of invasion of privacy, the facts indicate that over a period of time the plaintiff was required to be hospitalized on three occasions for psychiatric problems. Apparently, this became known in the workplace and was a matter of some discussion among her fellow employees, though nothing is shown in the record to indicate that this became known through the actions of any one of the named defendants. In fact, there is some evidence from the deposition of plaintiff that a co-employee, not one of the defendants, first learned of her hospitalization through the inquiries of that co-employee in calling hospitals to determine if the plaintiff was in fact a patient in one of those hospitals. Once again, the deposition of plaintiff shows the problem plaintiff faces in this respect, in that she cannot attribute the initiation of this invasion of privacy to any one of the individual named defendants. Further, to the extent that this asserted invasion of privacy constituted harassment by fellow employees and by plaintiff's supervisors, it is clearly a matter covered in the collective bargaining agreement and its grievance procedure.
 
 
 19
 As to the issue of conversion of property and trespass upon property, the evidence discloses that on the occasion of the absence of the plaintiff due to her illness, various of the defendants went through her desk and workspace and removed personal property which had been left on the premises. Whether this is a prerogative reserved to management where an employee is absent for a considerable period of time is quintessentially a matter for the collective bargaining agreement.
 
 
 20
 The collective bargaining agreement is contained in the transcript, occupying 25 pages, and it sets out a most meticulous and detailed schedule of rights and responsibilities for employees and for employers. After reading through the collective bargaining agreement, it is difficult to conceive of any allegation of the sort made by the plaintiff which is not covered by the collective bargaining agreement and by the detailed and precise grievance procedure set out in that agreement.
 
 
 21
 In summary, the conclusion of the court below that the various allegations brought forward by the plaintiff in this case were "inextricably intertwined" with the provisions of the collective bargaining agreement and that they were in fact grievances which might appropriately be processed through the procedures of that collective bargaining agreement is a conclusion which this court finds to be proper.
 
 
 22
 Since the issue raised in this appeal is solely limited to the propriety of the refusal of the district court below to remand the particular claims to the state court, it must be concluded that the court below was correct in refusing to remand.
 
 
 23
 For the reasons indicated, the judgment of the court below refusing to remand these claims to the state court is
 
 
 24
 AFFIRMED.
 
 
 
 *
 This conclusion is in accord with the reasoning and holding of the recent opinion of this court in McCormick v. AT & T Technologies, Inc., No. 88-3542, slip. op. (4th Cir. May 28, 1991) (en banc )